**Dwight S. THOMPSON, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Immigration and Naturalization Service, Acting Assistant Director Edward McElroy, et al., Respondents.**

**No. 95 Civ. 6477 (LAK).**

United States District Court,
S.D. New York.

Nov. 7, 1995.

---

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

James F. LoPrest, Assistant United States Attorney, New York City, Mary Jo White, United States Attorney, New York City, for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Petitioner seeks review, by a petition for a writ of habeas corpus, of his detention pending judicial review of an order of deportation. Although the Immigration and Naturalization Service ("INS") has not distinguished itself in this matter, the writ nevertheless must be denied.

### Facts

Petitioner Dwight S. Thompson is a thirty-four year old native and citizen of Jamaica and has been a lawful permanent resident of the United States since June 26, 1983. On July 18, 1989, he was convicted in New York Supreme Court, Kings County, on his plea of guilty, of criminal possession of a loaded firearm in the third degree, which is a class D felony. At about the same time, he was convicted also of attempted robbery in the second degree, also a class D felony. On August 8, 1989, Thompson was sentenced to two concurrent terms of one to three years imprisonment.

On April 13, 1993, Thompson was convicted in New York Supreme Court, Kings County, as a repeat felony offender of attempted criminal possession of a controlled substance in the third degree, a class E felony. He was sentenced to eighteen months to three years imprisonment on that conviction.

On or about January 5, 1994, while Thompson was in State custody, the INS issued an administrative order to show cause charging that Thompson was deportable from the United States, pursuant to 8 U.S.C. § 1251(a)(2)(B)(i) and 1251(a)(2)(C), on the bases of his controlled substance and firearms convictions, respectively. At the hearing, Thompson conceded through counsel that he was deportable as charged, but sought to apply for a discretionary waiver of deportation under Section 212(c) of the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1182(c). The Immigration Judge, however, ruled that Thompson was not eligible for a Section 212(c) waiver because his deportability as a convicted firearms offender corresponded to no ground of exclusion. Thompson was ordered deported.

Thompson appealed to the Board of Immigration Appeals ("BIA") which, on September 6, 1994, affirmed the deportation order. He subsequently sought review in the Second Circuit, although the petition for review has

been withdrawn without prejudice to reinstatement following the Second Circuit's impending decision in *Cato v. INS*, No. 93–4039 (2d Cir. submitted June 2, 1995), which involves the question whether a convicted firearms offender is eligible for a Section 212(c) waiver.

Thompson was released from State custody to INS custody on or about November 30, 1994, shortly after he filed his petition for review of the deportation order with the Second Circuit. He began seeking release pending judicial review of his deportation order on May 25, 1995, when his counsel requested the District Director of the INS to fix a bond for Thompson. (Habeas petition ("Pet") ¶ 8 & Ex. G) Although the copy submitted by petitioner bears a received stamp alleged to be that of the District Director, a contention the government does not deny, no action was taken on the request. On August 10, 1995, the Assistant United States Attorney told petitioner's counsel that the INS had no record of receiving such a request. (Pet. ¶ 8)

On May 30, 1995, Thompson's counsel requested the Immigration Judge to fix bond, noting that the previous request had not be responded to. This request was served on the INS Trial Attorney. (Pet. ¶ 9 & Ex. H) The Immigration Judge physically returned the request to petitioner's counsel, stating that he could not consider a bond request because Thompson had a case pending in the federal court. (*Id.*)

Having been unsuccessful in obtaining any action on the bond requests, Thompson on July 10, 1995 filed an application with the BIA seeking an order directing the District Director to respond to the bond request. (*Id.* ¶ 11 & Ex. I) The record discloses no action by the BIA.

Frustrated by the INS's inaction, Thompson filed this petition for a writ of habeas corpus seeking his immediate release, either on his own recognizance or upon furnishing a reasonable bond. (Pet.) On August 17, 1995, this Court directed the government to respond to the petition within thirty days.

On September 15, 1995, the parties signed a stipulation and order, approved by the Court on September 20, 1995, which provided that (a) "[t]he District Director shall adjudicate petitioner's request for release on bond and render a decision no later than October 11, 1995," and (b) the action was dismissed with prejudice, subject to petitioner's right to reopen by written request if the District Director failed to act by October 11, 1995.

The District Director again failed to act, ignoring his obligations under the stipulation and order. On November 2, 1995, the Court, on petitioner's application, directed the government to show cause why petitioner should not be immediately released from custody. The papers were served on the government the same day.

Apparently spurred to action by the order to show cause, the District Director on November 2, 1995, finally denied petitioner's request for release, overruling the recommendation of the deportation officer in charge of petitioner's case, who recommended that petitioner be released on $15,000 bond. (Return ¶¶ 2–3) The District Director based his decision on the conclusions that Thompson has little chance of success in ultimately avoiding deportation, making him a flight risk, and, in view of his criminal record, is a threat to the community. (Return Ex. 2)

*Discussion*

The government argues, quite correctly, that the District Director's determination moots the petition insofar as it sought an order directing the District Director to adjudicate petitioner's application for release pending judicial review of the deportation order. In consequence, that aspect of the petition must be denied.

The petition must be denied as well insofar as it seeks review of the merits of the District Director's determination.

■ Section 242(c) of the Act provides in substance that the Attorney General or her designee may detain or, in her discretion, release an alien on bond and other conditions pending execution of a final order of deportation. 8 U.S.C. § 1252(c). The scope of judicial review of an INS district director's decision denying a request for release, moreover,

is narrow. Absent a fundamental error of law, invidious discrimination, or an abuse of discretion, such decisions must be upheld. *E.g., Thause v. McElroy,* 856 F.Supp. 159, 160 (S.D.N.Y.1994); *see United States ex rel. Belfrage v. Shaughnessy,* 212 F.2d 128, 129 (2d Cir.1954); *United States ex rel. Yaris v. Esperdy,* 202 F.2d 109, 111–12 (2d Cir.1953); *Application of Maringolo,* 303 F.Supp. 1389, 1392 (S.D.N.Y.1969); *cf. Douglas v. INS,* 28 F.3d 241, 243 (2d Cir.1994) (review of denial of Section 212(c) waiver).

■ Here, there is no colorable claim that the District Director exceeded the broad bounds of the proper exercise of his discretion. Petitioner's prospects of overturning the deportation order are slim. Even if the Second Circuit were to hold that the firearms conviction does not render Thompson ineligible for Section 212(c) relief, the Court has no basis for questioning the District Director's conclusion that such relief probably would be denied in the exercise of discretion in view of petitioner's drug conviction. Hence, the District Director's conclusion that Thompson, if released, would be a flight risk is well within bounds, as is his conclusion that Thompson would be a threat to the community in view of the firearms conviction.

■ At the hearing, petitioner advised the Court that the INS, on November 1, 1995, approved a petition filed by Thompson's mother that could lead to the issuance to Thompson of an immigrant visa, which in turn could be the subject of an application for adjustment of status to that of permanent resident alien. The point of the argument was that this information, which was not before the District Director, might change the balance of considerations with respect to the application for release pending deportation on the theory that petitioner has greater incentive to comply with the directives of the INS. This petition, however, must be decided on the record that was before the District Director. As the government conceded at oral argument, petitioner is free to reapply for release pending deportation and to bring this additional information to the attention of the District Director. That is the appropriate course.

While the petition must be denied, a comment on the proceedings in the INS is appropriate. The Court is mindful of the burdens on the INS and assumes that it has been affected adversely by limitations on governmental resources. Nevertheless, it is difficult to understand why it took almost six months, and two applications to this Court, for petitioner to get a decision from the INS on his application for release pending deportation. It is impossible to understand why the INS felt free to ignore a court order, consented to by the government, that it decide the matter by October 11, 1995. Although petitioner is a convicted felon, he is a human being and, while in this country, entitled to the protection of our laws. His application, whatever its merits, was entitled to reasonably prompt attention.

SO ORDERED.