Carlos Arnoldo Vanegas AGUILAR, Petitioner,

v.

Warren A. LEWIS, Immigration and Naturalization Service District Director, Respondent.

No. Civ.A. 99–662–A.

United States District Court, E.D. Virginia, Alexandria Division.

June 11, 1999.

**540**

Julien A. Graystone, Law Offices of Julien A. Graystone, Ana T. Jacobs, Ana T. Jacobs & Associates, Washington, DC, for petitioner.

Dennis Kennedy, Assistant United States Attorney, Alexandria, VA, Alice E. Loughran, Office of Immigration Litigation, Civil Division, Washington, DC, for respondent.

### Memorandum Opinion

CACHERIS, District Judge.

This matter is before the Court on Petitioner Carlos Arnoldo Vanegas Aguilar's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2141. For the reasons explained below, the Court will grant his Petition.

### Facts

Petitioner is a forty-year-old alien from El Salvador who became a Legal Permanent Resident of the United States on April 17, 1990. He also is the father of a four-year-old U.S. citizen for whom he provides economic support. On December 14, 1993, Petitioner was convicted of attempted carnal knowledge of a minor under D.C.Code 22–103. He was sentenced for one year, sentence suspended, and was given two years probation. Having successfully fulfilled the terms of probation, Petitioner was never placed in criminal detention for this charge.

On January 12, 1999, the Immigration and Naturalization Service ("INS or Respondent") arrested and incarcerated Petitioner on the ground that Petitioner's December 14, 1993 conviction rendered him removable pursuant to sections 237(a)(2)(A)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA").[1]

---

1. The INA was amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). See Pub.L. No. 104–208, Div. C, Title III (Sept. 30, 1996).

Sections 237(a)(2)(A)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227, provide:

§ 1227. Deportable aliens
(a) Classes of deportable aliens.
Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: ...
(2) Criminal offenses ...
  (A) General Crimes
  (I) Crimes of moral turpitude

Any alien who—

(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and

(II) is convicted of a crime for which a sentence of one year or longer may be imposed,

is deportable. . . .

(iii) Aggravated felony

Any alien who is convicted of an aggravated felony at any time after admission is deportable.

Petitioner currently is in custody at the Virginia Beach Detention Center.

After Petitioner's arrest, he filed a Motion before an Immigration Judge seeking release from detention. He argued that he did not pose a risk of flight and that he did not pose a danger to the community. Petitioner also argued that the statutory language of § 236(c) of the INA, 8 U.S.C. § 1226(c),[2] did not prohibit the Immigration Judge from releasing Petitioner from custody.

Petitioner contended that the mandatory "custody" language of § 236(c)(1) did not apply to him because he was never incarcerated, and he therefore was never "released" as construed in the statute. He also contended that even if he was released, the statute applies only prospectively, not retroactively, and thus, it did not apply to him because he had already been released when the statute was enacted. For these reasons, Petitioner maintained that the statute did not bar the Immigration Judge from using his discretion in determining whether to release Petitioner from custody.

The Immigration Judge agreed with Petitioner's arguments and granted him release from detention provided that he pay a $1,500 bond. The INS, however, served Petitioner with notice of its intent to appeal the custody determination, which automatically stayed the Immigration Judge's decision under 8 C.F.R. § 3.19(i)(2). The INS then filed its notice of appeal, thereby denying Petitioner's opportunity to post bond. Petitioner is now in this Court making the same arguments he made before the Immigration Judge and seeking relief from being illegally detained.

*Analysis*

**A. Jurisdiction**

The INS first argues that this Court does not have jurisdiction to hear the merits of Petitioner's claim. The INS contends that Petitioner has not exhausted his administrative remedies and that the statutory language of § 236(e) of the INA, 8 U.S.C. 1226(e), deprives this Court of jurisdiction.

**1. Exhaustion of Administrative Remedies**

The Immigration Judge's decision allowing Petitioner to be released from custody upon posting bond is currently on appeal to the Board of Immigration Appeals ("BIA"). Because the BIA has yet to issue a final decision, Respondent argues that Petitioner has not exhausted his administrative remedies, and therefore, this Court lacks subject matter jurisdiction.

■■■ An alien must generally exhaust all administrative remedies before seeking review of a final order of removal. *See* 8 U.S.C. § 1252(d). In this case, however, Petitioner is not seeking review of a removal order, instead he seeks review of the INS's decision to keep him in custody while he awaits a determination as to whether or not he will be removed from the United States. This distinction is significant, for there is no federal statute that imposes an exhaustion requirement on aliens taken into custody pending their removal. *See Montero v. Cobb*, 937 F.Supp. 88, 91 (D.Mass.1996). Because exhaustion is not required by statute, sound judicial discretion must govern this Court's decision of whether to exercise jurisdiction absent exhaustion. *See*

**2.** 8 U.S.C. § 1226(c)(1) provides, in relevant part:

(c) Detention of criminal aliens
(1) Custody
The Attorney General shall take into custody any alien who—
  (B) is deportable by reason of having committed any offense covered in section

1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
  (C) is deportable under section 1227(a)(2)(A)(I) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year,
when the alien is released.

*McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

The Supreme Court has instructed that one circumstance in which district courts need not require exhaustion is when the administrative body has predetermined the issue before it. *See id.* at 148, 112 S.Ct. 1081. Petitioner argues that exhaustion in this case would be futile because the BIA has already ruled, in an en banc proceeding, that the Transition Period Custody Rules enacted by § 303(b) of the IIRIRA apply to aliens who were released from incarceration prior to the Rules' effective date. *See In re Noble*, Int. Dec. 3301 (BIA 1997). Because the Transition Period Custody Rules contain wording similar to the language in § 236(c) of the INA, Petitioner maintains that the BIA would also rule that § 236(c) applies to him even though he was released, or finished the terms of his probation, before § 236(c) went into effect.[3]

After examining the *In re Noble* case, the Court agrees with Petitioner. Given the BIA's retroactive application of the Transition Period Custody Rules, the Court thinks it is highly likely that the BIA would apply § 236(c) of the INA retroactively to Petitioner, and therefore an appeal to the BIA would be futile for Petitioner. *See Alwaday v. Beebe*, 43 F.Supp.2d 1130, 1132 (D.Or.1999) (finding that exhaustion would be futile because the BIA had already determined that the Transition Period Custody Rules applied to aliens who had been released from prison before the Rules' effective date); *Pastor–Camarena v. Smith*, 977 F.Supp. 1415, 1416 (W.D.Wash.1997) (concluding that an appeal to the BIA would be futile given the outcome of *In re Noble* ).

Moreover, the Court also notes that in several factually similar cases, other district courts have decided to exercise jurisdiction even though the petitioner in those cases failed to exhaust his administrative

remedies. *See e.g. Alwaday* at 1132; *Tam v. INS*, 14 F.Supp.2d 1184, 1189 (E.D.Cal. 1998); *Pastor–Camarena*, 977 F.Supp. at 1417; *Montero*, 937 F.Supp. at 90–92. In light of the futility of Petitioner's argument before the BIA, and given the current trend of district courts across the country, this Court will not decline jurisdiction on the basis that Petitioner failed to exhaust his administrative remedies before coming to federal court.

**2. Jurisdiction Pursuant to 8 U.S.C. § 1226(e)**

■ The INS next argues that by promulgating § 236(e), Congress has stripped this Court's jurisdiction over Petitioner's Petition for Writ of Habeas Corpus. That section provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the determination or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Petitioner, on the other hand, argues that he is being detained pursuant to § 236(c)(1)'s mandatory provisions, as opposed to any of the discretionary provisions contained in § 236, and therefore, judicial review is not prohibited by § 236(e). These competing arguments essentially boil down to whether to interpret § 236(e), 8 U.S.C. § 1226(e), as a narrow jurisdictional restriction or whether to interpret it as a more general jurisdictional restriction.

In *Reno v. American–Arab Anti–Discrimination Committee*, —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court recently interpreted a jurisdictional stripping provision of the INA, 8 U.S.C. § 1252(g). That section provides:

---

**3.** The Transition Period Custody Rules were in effect between October 9, 1996 and October 9, 1998, when they were replaced by INA § 236. The Transition Period Custody Rules,

like INA § 236 required that aliens with certain convictions be taken into custody "when the alien is released."

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Instead of holding that the provision was a general review-preclusion law, the Court interpreted the section narrowly, concluding that it covered only the three listed situations: decisions to commence proceedings, adjudicate cases, or execute removal orders. *See American–Arab,* —— U.S. at ——, 119 S.Ct. at 945. Although the provision in *American–Arab* differs from the provision in this case, it is instructive in that it suggests that the Supreme Court would also interpret the jurisdictional language of § 236(e) narrowly.

In addition, district courts that have interpreted § 236(e) have concluded that it does not bar district courts from retaining jurisdiction over petitioners of habeas corpus relief. In *Velasquez v. Reno,* for example, the court reasoned that absent a clear and express statement that habeas jurisdiction has been modified, which § 236(e) did not provide, it would be improper to find that its 28 U.S.C. § 2241 statutory grant of jurisdiction had been repealed. 37 F.Supp.2d 663, 667–69 (D.N.J.1999). Moreover, an Oregon district court also recently determined that despite the jurisdictional limiting language in § 236(e), the court still retained jurisdiction to evaluate the petitioner's habeas corpus petition on the merits. *See Alwaday v. Beebe,* at 1132; *see also Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir. 1999) (finding jurisdiction when the petitioner contended that § 236(c) violated the Due Process Clause of the Fifth Amendment).

With these cases in mind, the Court now turns to the plain language of § 236 in deciding whether to adopt Petitioner's argument that the jurisdictional stripping language in § 236(e) applies only to discretionary decisions of the Attorney General.

*See American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (stating that in cases of statutory construction, courts must consider the language employed by Congress, and absent any clearly expressed legislative intention to the contrary, the language must be regarded as conclusory). Petitioner's argument can only make sense if some of the language in § 236 speaks to "discretionary" decisions while other phrases refer to "mandatory" requirements. Otherwise, if all the language in § 236 referred to mandatory requirements on the part of the Attorney General, then Petitioner's argument would carry little weight because it would render § 236(e) meaningless.

But after reviewing § 236 as a whole, it is clear that the section differentiates between what the Attorney General is required to do, and what the Attorney General may opt to do. The language in some subsections provides that the Attorney General "may" take action, whereas the language in other subsections provides that the Attorney General "shall" take certain action. *Compare* 8 U.S.C. §§ 1226(a), (b), and (c)(2) *with* 8 U.S.C. §§ 1226(c)(1) and (d). In light of these differences, it makes sense that when Congress provided in § 236(e) that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" it meant just that and nothing more.

Recognizing the current trend of other district courts that have ruled on the statutory language at issue, and after carefully reviewing the plain language contained in § 236, the Court finds that § 236(e) of the INA has not stripped away its jurisdictional authority to consider the merits of Petitioner's habeas corpus petition.

B. *Merits*

Having determined that this Court retains jurisdiction over Petitioner's habeas petition, the Court must now look at the merits of his arguments.

Petitioner first contends that under a plain reading of § 236(c), the provision does not apply to him. The thrust of Petitioner's argument is that the mandatory detention provision of the INA, § 236(c), should not be applied to him because he had already been released from criminal custody when the statute went into effect, and if Congress intended for § 236© to be applied retroactively, it would have said so.

The Court agrees with Petitioner's statutory construction of § 236(c). The mandatory detention language of this subsection provides that the Attorney General shall take certain convicted aliens into custody "when the alien is released." It would be contrary to the plain language to interpret "when the alien is released" to include aliens who had already been released prior to the statute's effective date and who had been released prior to being taken into custody for removal proceedings. *See Alwaday*, at 1133; *Pastor-Camarena*, 977 F.Supp. at 1417.

Furthermore, under § 303(b) of the IIRIRA, which allowed the Attorney General to adopt the Transition Period Custody Rules prior to the implementation of § 236(c), Congress stated that after the expiration of the Transition Rules, § 236© "shall apply to individuals released after such periods." With the Attorney General having opted for the implementation of the Transition Period Custody Rules, there can be no question that § 236(c)'s mandatory custody requirement applies only to aliens who have been released subsequent to the expiration of the Rules. *See* IIRIRA, Pub.L. No. 104-208, Div. C, Title III, § 303(b) (Sept. 30, 1996); *Velasquez*, at 670.

Petitioner completed his probation in or about December 1995, thus the latest that it can be said that he was released, if at all, was at that time. Because his release occurred well before § 236(c)'s effective date of October 9, 1998 (which is the day that the Transition Rules expired) the mandatory language of § 236(c) does not apply to him, and the Attorney General was not required to take Petitioner into custody while the determination of whether he should be removed from the country was being made.

Construing § 236(c) this way, the Court need not, and should not, address the constitutional arguments raised by Petitioner. *See Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (stating that a fundamental rule of judicial restraint is that courts ought not to pass on questions of constitutionality unless such adjudication is unavoidable.)

### Conclusion

After determining that the Court has jurisdiction to consider the merits of Petitioner's arguments, and after concluding that 8 U.S.C. § 1226(c) does not apply to Petitioner, the Court will grant Petitioner's Habeas Corpus Petition. It is hereby Ordered that an Immigration Judge shall provide Petitioner with an individualized bond hearing within two weeks of this Memorandum Opinion to determine whether, and under what conditions, Petitioner may be released from custody pending the conclusion of the removal proceedings against him.